UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AMANDA BLANC, | CASE NO. 5:17CV1450 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| NANCY A. BERRYHILL[1], ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION & ORDER |
| Defendant. | |

Plaintiff Amanda Blanc ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. In her brief on the merits, Plaintiff asserts that the administrative law judge ("ALJ") violated the treating physician rule concerning the opinion of her treating psychiatrist, Dr. Nkanginiemi. ECF Dkt. #17 at 8-12. She also asserts that new and material evidence warrants a remand of her case. *Id*. at 12-13. For the following reasons, the Court AFFIRMS the decision of the ALJ and DISMISSES Plaintiff's case in its entirety WITH PREJUDICE. The Court also finds that a sentence six remand in this case is not warranted as the evidence that Plaintiff presents is not material.

## I.  FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed an application for DIB alleging disability beginning December 15, 2007 due to mental health issues, congenital adrenal hyperplasia- salt losing type/endocrinology problems, pulmonary embolisms in both lungs, hypertension, and partial amputation of her left middle finger. ECF Dkt. #12 ("Tr.") at 196, 267-271, 378, 411.[2] The Social Security Administration ("SSA")

---

[1] On January 20, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2] All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

denied her application initially and upon reconsideration. *Id.* at 221-230. Plaintiff requested a hearing before an ALJ, which was held on January 14, 2016. *Id*. at 65, 231-235.

On May 4, 2016, the ALJ issued a decision denying Plaintiff's application for DIB. Tr. at 31-53. On July 10, 2017, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. She filed a brief on the merits on December 20, 2017 and Defendant filed her merits brief on February 20, 2018. ECF Dkt. #s 17, 20.

## II.    **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

In his May 4, 2016 decision, the ALJ found that Plaintiff, who was 33 years old at the time of the hearing, had not engaged in substantial gainful activity since her alleged onset date, and he found that since that date, Plaintiff had the severe impairments of: depression with anxiety, asthma, congenital adrenal hyperplasia ("CAH"), edema noted in both legs, left middle digit partial amputation, and status post remote pulmonary embolism. Tr. at 33. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1. *Id*. at 34-36.

After considering the record, the ALJ found that Plaintiff had the RFC to perform work at the sedentary exertional level with the following limitations: sit/stand option which would allow the individual to sit or stand alternately at will, provided that she is not off-task more than 10% of the work period; can occasionally use ramps and stairs, but can never use ladders, ropes or scaffolds; can occasionally balance, kneel, stoop, crouch and crawl; frequent handling and fingering with the left upper extremity; avoidance of concentrated exposure to extreme cold and heat; never operate a motor vehicle during the course of a workday; restricted from hazards, such as heights and machinery, but could avoid ordinary hazards, such as boxes on the floor, doors ajar, or approaching people or vehicles; limited to simple tasks; limited to routine and repetitive tasks; not able to perform at a production rate pace (e.g., assembly line work), but can perform goal-oriented work (e.g. office cleaner); limited to simple work-related decisions; limited to occasional interaction with a small group of coworkers, where the contact is casual in nature; limited to occasional, superficial interaction with the public; and limited to tolerating few changes in a routine work setting and when said changes do occur, they need to take place gradually and would occur infrequently. Tr. at 36.

Based upon Plaintiff's age, education, work experience, the RFC, and the VE's testimony, the ALJ determined that Plaintiff could not perform her past relevant work, but she could perform jobs existing in significant numbers in the national economy, such as addresser, document preparer, and touch up screener/printed circuit board assembly. Tr. at 51-52. In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, and she was not entitled to DIB from December 15, 2007, through March 31, 2015, her date last insured. *Id.* at 53.

## III.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any

fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

**V.    LAW AND ANALYSIS**

**A.    MEDICAL OPINION OF PSYCHIATRIST, DR. NKANGINIEMI**

Plaintiff asserts that the ALJ erred in the weight that he attributed to the opinion of her treating psychiatrist, Dr. Nkanginiemi. ECF Dkt. #17 at 9-15  For the following reasons, the Court finds that the ALJ properly evaluated his opinion and substantial evidence supports the ALJ's treatment of that opinion.

A claimant's RFC is an assessment of the most that a claimant "can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must consider all of a claimant's impairments and symptoms and the extent to which they are consistent with the objective medical evidence. 20 C.F.R. § 404.1545(a)(3). The claimant bears the responsibility of providing the evidence used to make a RFC finding. *Id*. However, the RFC determination is one reserved for the ALJ. 20 C.F.R. §

-4-

404.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5. Social Security Ruling ("SSR") 96-8p provides guidance on assessing RFC in social security cases. SSR 96-8p. The Ruling states that the RFC assessment must identify the claimant's functional limitations and restrictions and assess her work-related abilities on a function-by-function basis. *Id*. Further, it states that the RFC assessment must be based on *all* of the relevant evidence in the record, including medical history, medical signs and lab findings, the effects of treatment, daily living activity reports, lay evidence, recorded observations, effects of symptoms, evidence from work attempts, the need for a structured living environment and work evaluations. *Id*.

An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons"[3] for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

---

[3] The Court notes that the SSA has changed the treating physician rule effective March 27, 2017. *See* 20 C.F.R. § 416.920. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors.

-5-

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

When an ALJ decides not to give a treating physician's opinion controlling weight, the ALJ must consider a host of factors in determining the weight to give that opinion, such as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004) (citing 20 C.F.R. § 404.1527(d)(2)).

On February 24, 2015, Dr. Nkanginiemi, a psychiatrist who treated Plaintiff, completed a check-box medical source statement regarding Plaintiff's ability to perform work-related mental activities. Tr. at 831. He opined that Plaintiff had moderate limitations in understanding, remembering, and carrying out simple instructions, and marked limitations in making judgments on simple work-related decisions, understanding, remembering and executing complex instructions, and in making judgments on complex, work-related decisions. *Id.* When asked to identify the factors

that supported his assessment, Dr. Nkanginiemi wrote that Plaintiff had short-term memory problems, "cannot focus, concentration is poor, struggles with anxiety and mood swings." *Id*.

Dr. Nkanginiemi also checked that Plaintiff was markedly limited in her abilities to interact appropriately with the public, supervisors, and co-workers, and she was markedly limited in responding appropriately to usual work situations and to changes in a routine work setting. Tr. at 832. When asked to identify the factors supporting this assessment, Dr. Nkanginiemi wrote that Plaintiff had "adrenal hyperplasia, pulmonary embolism, bipolar disorder & panic disorder— gets irritable quickly." *Id*. He also noted that deadlines created anxiety for Plaintiff and mood changes. *Id.* He further noted that Plaintiff had a partial amputation on the middle finger of her left hand. *Id*.

The ALJ addressed this opinion in his decision. Tr. at 49-50. He explained that he gave partial weight to Dr. Nkanginiemi's opinion because his limitations for Plaintiff were not supported by explanation and they were inconsistent with the other evidence in the file. Tr. at 50. The ALJ further noted that Dr. Nkanginiemi did not have a longitudinal history with Plaintiff as he only saw Plaintiff four times. *Id*.

Plaintiff asserts that the ALJ improperly rejected the opinion of Dr. Nkanginiemi when numerous records supported his opinion. ECF Dkt. #17 at 9. She cites as support the treatment notes from Phoenix Rising Recovery, Inc. and Coleman Professional Services, where Plaintiff received mental health treatment. *Id*. She also challenges the ALJ's reliance on Dr. Nkanginiemi's lack of a longitudinal history with Plaintiff as a reason to attribute less than controlling or less than great weight to his opinion. *Id.* She points out that Dr. Nkangniemi saw Plaintiff four times and the ALJ gave more weight to the opinions of medical sources that had not treated Plaintiff at all, or had merely examined her for the agency or reviewed her file. *Id.*

The ALJ did state that Dr. Nkanginiemi did not have a longitudinal history with Plaintiff, explaining that the psychiatrist saw Plaintiff only four times. Tr. at 50, citing Tr. at 813-830. Plaintiff contends that this finding is "ironic" since the ALJ assigned great weight to reviewing physicians who have never examined Plaintiff, much less treated her. ECF Dkt. #17 at 9. Defendant points out that the record shows that Dr. Nkanginiemi actually saw Plaintiff only twice and issued his opinion shortly after the second visit. ECF Dkt. #20 at 10, citing Tr. at 813-817, 822-827.

-7-

Defendant contests that Dr. Nkanginiemi is not a treating source based upon the lack of treatment history, citing Sixth Circuit caselaw holding that two to three visits with a doctor will not suffice to establish a treating relationship. ECF Dkt. #20 at 10, citing *Kornecky*, 167 Fed. App'x at 506-507. Defendant notes that the other two visits that the ALJ attributed to Dr. Nkangniemi were actually visits in Dr. Nkangniemi's office where Plaintiff met only with Licensed Professional Counselor Jan Murphy for two one-hour visits and she had no contact with Dr. Nkangniemi. ECF Dkt. #20 at 10, fn. 3, citing Tr. at 818-821.

The Court questions whether Dr. Nkangniemi is a treating physician. As Defendant points out, the treatment notes from two of the four visits cited by the ALJ show that Plaintiff had counseling with Ms. Murphy and they do not show that Dr. Nkangniemi saw or treated Plaintiff. Tr. at 818-821. Those notes specifically state that Plaintiff met with Ms. Murphy and Ms. Murphy electronically signed the notes. *Id*.

Nevertheless, the ALJ specifically referred to Dr. Nkanginiemi as Plaintiff's treating physician. Tr. at 49. The Court notes that the ALJ mistakenly referred to Dr. Nkanginiemi as Plaintiff's treating "psychologist," when in fact he is a psychiatrist. *Id*. at 49, 832. In any event, since the ALJ identified Dr. Nkanginiemi as a treating physician, Defendant's post-hoc rationale as to whether he is a treating physician is not well-taken and the ALJ was obligated to apply the treating physician rule to the opinion of Dr. Nkangniemi.

Plaintiff asserts that the ALJ did not provide specific and articulate reasons for affording less than controlling weight to Dr. Nkangniemi's opinion. ECF Dkt. #17 at 12. The Court does not agree with Plaintiff. The ALJ did provide specific and articulate reasons for affording Dr. Nkanginiemi's opinion less than controlling weight as he indicated that Dr. Nkanginiemi failed to provide explanation for his severe limitations, Dr. Nkanginiemi's opinion was inconsistent with other evidence in the record, and Dr. Nkanginiemi lacked a longitudinal history with Plaintiff. Tr. at 50.

The Court agrees with Plaintiff that the ALJ incorrectly concluded that Dr. Nkangniemi failed to provide sufficient explanation for his opinion. Tr. at 50. While Dr. Nkangniemi did not provide explicit detail when explaining why he opined the limitations for Plaintiff in his medical

-8-

source statement, he did provide adequate reasons as he cited to Plaintiff's conditions and he noted that she had short-term memory problems, trouble focusing, poor concentration, and anxiety issues relating to deadlines and mood swings. Tr. at 831-832. Thus, the ALJ was incorrect in attributing less than controlling weight and only partial weight to Dr. Nkanginiemi's limitations based upon this reason. However, the Court finds that the ALJ's other reason for affording less than controlling weight and only partial weight to Dr. Nkanginiemi's opinion suffices to meet the treating physician rule and substantial evidence supports his decision not to afford the opinion controlling weight and only partial weight. The ALJ concluded that Dr. Nkanginiemi's opinion was not consistent with the other evidence of record and while he did not cite specifically to evidence to support this finding in this part of his decision, the rest of his decision supports this finding. Tr. at 49-50.

The Court notes that the ALJ did not totally reject Dr. Nkanginiemi's opinion. Rather, he afforded it partial weight. Tr. at 50. In fact, the ALJ's mental RFC for Plaintiff incorporated many of Dr. Nkanginiemi's limitations, such as Dr. Nkanginiemi's moderate limitations for Plaintiff in understanding, remembering and carrying out simple instructions, his marked limitations for Plaintiff in understanding, remembering and carrying out complex instructions, and his opinion that Plaintiff had marked limitations in her ability to make judgments on complex, work-related decisions. Tr. at 36, 831. The ALJ limited Plaintiff to simple, routine and repetitive tasks and to simple, work-related decisions. *Id*. at 36. The ALJ also accepted Dr. Nkanginiemi's finding that deadlines created anxiety and mood changes in Plaintiff, as the ALJ limited Plaintiff to work that did not involve a production rate pace. *Id*.

The ALJ also partially accepted Dr. Nkanginiemi's opinion that Plaintiff had marked limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting as the ALJ limited Plaintiff to few changes in a routine work setting with infrequent changes that if they had to occur, they had to occur gradually. Tr. at 36, 832. The ALJ further partially accepted Dr. Nkanginiemi's opinion that Plaintiff was markedly limited in interacting with the public, supervisors and co-workers as the ALJ limited Plaintiff to only occasional interaction with a small group of co-workers, where the contact is casual in nature, and to occasional superficial

interaction with the public. *Id.* The ALJ also partially accepted Dr. Nkanginiemi's opinion that Plaintiff had marked limitations in responding appropriately to usual work situations and to changes in a routine work setting by limiting Plaintiff to a work environment that had only few changes in the routine work setting with infrequent changes that if said changes had to occur, they had to occur gradually. *Id.*

As to the marked limitations that the ALJ did not accept or that he discounted, the ALJ provided good reasons for doing so and substantial evidence supports his reasons. Again, while the ALJ did not provide citations to the "other evidence" that was inconsistent with Dr. Nkangniemi's marked limitations in the part of the decision addressing the weight given to the opinion, he did provide references to such evidence elsewhere in his decision. The ALJ noted in other parts of his decision that Plaintiff had reported at a counseling session in January of 2014 that she was helping a friend remodel houses and she was enjoying it. Tr. at 37, citing Tr. at 711. This negates a finding of marked limitations in social interactions. The ALJ also cited to Plaintiff's reports that she could go grocery shopping, which negates a finding of marked limitations in interacting with the public. Tr. at 49, citing Tr. at 397. The ALJ cited to the findings of Plaintiff's counselor and nurse specialist from 2014 and 2015, who indicated that Plaintiff had good eye contact, clear speech, and logical thought processes and thought content. Tr. at 49-50, citing Tr. at 707, 934. He cited to the treatment notes of Plaintiff's counselor dated August 27, 2015 in which she assigned Plaintiff a global range of functioning score of 55, indicative of moderate symptoms. Tr. at 50, citing Tr. at 935. He also cited to the counselor's findings that Plaintiff did not have problems in her social environment and she had normal judgment and insight. *Id.* at 50, citing Tr. at 934. The ALJ also referred to Dr. Nkanginiemi's two appointments with Plaintiff in which he diagnosed her with bipolar disorder, agoraphobia with panic disorder, and adjustment reaction with physical symptoms, and assigned her a GAF of 40 which indicated severe symptoms, but Dr. Nkanginiemi nevertheless recommended common sense lifestyle changes and more frequent therapy to help Plaintiff, as well as breath control, counting, exercising and better sleep. Tr. at 42, citing Tr. at 814-815. The ALJ also noted Plaintiff's intake assessments for counseling, in which Plaintiff had normal cognition, speech,

thought processes, and insight, and she was assessed a GAF of 55, indicative of moderate symptoms, and one counselor determined Plaintiff's severity level as mild. Tr. at 43, citing Tr. at 958.

The recitation of this evidence in the record constitutes substantial evidence to support the ALJ's decision to attribute less than controlling weight to Dr. Nkanginiemi's marked limitations for Plaintiff. Thus, the ALJ then had to determine the weight to give Dr. Nkanginiemi's opinion, which involved considering factors such as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544, citing 20 C.F.R. § 404.1527(d)(2). The ALJ addressed these factors in his decision. He noted Dr. Nkanginiemi's specialty, although he incorrectly referred to him as a psychologist and not a psychiatrist, and the ALJ noted that Dr. Nkanginiemi lacked a long treating history with Plaintiff. Tr. at 4-50. He also indicated that Dr. Nkanginiemi's marked limitations for Plaintiff were not consistent with the record as a whole. Tr. at 49-50. He referred to the above-cited evidence in the record, as well as Plaintiff's reports that she could balance a checkbook, she built houses with a friend, she went grocery shopping, and she played on a computer. *Id*. at 397, 707, 711, 934-935, 958. The ALJ also reviewed the opinions of the examining psychologist, who examined Plaintiff in 2009 and found that Plaintiff was mildly impaired in relating to supervisors and co-workers for simple, repetitive tasks, she was mildly impaired in withstanding stress and pressures with daily work activity, and moderately impaired in maintaining concentration, persistence and pace. Tr. at 47, citing Tr. at 467. The ALJ cited to and specifically discussed the findings of each of the four agency reviewing psychologists, who opined less than marked limitations for Plaintiff. *Id*. at 47-49. The ALJ assigned great weight to the opinion of the examining psychologist and partial weight to the opinions of the reviewing psychologists, finding more restrictions than the reviewers. *Id.*

Based upon the standard of review, the ALJ's decision, and the evidence of record, the Court finds that ALJ adequately considered and addressed Dr. Nkanginiemi's medical source statement and sufficiently explained why he afforded it less than controlling weight and only partial weight. Substantial evidence supports his determination.

## B.  NEW AND MATERIAL EVIDENCE

Plaintiff also claims that new and material evidence requires that her case be remanded for additional proceedings. ECF Dkt. #17 at 12-13. The new evidence proffered by Plaintiff is a functional capacities evaluation ("FCE") dated June 28, 2016 concerning Plaintiff's CAH that she submitted to the Appeals Council to add to the record in her case for review. Tr. at 17. On May 11, 2017, the Appeal Council issued a letter indicating that it had considered Plaintiff's reasons for disagreeing with the ALJ's decision and found no reason to review the ALJ's decision. *Id.* at 1-6.

Defendant asserts that Plaintiff cannot meet her burden of showing that the FCE is material because she must show that it would likely change the ALJ's decision and she cannot do so because the evidence relates to her functioning well after the relevant time period considered in this case. ECF Dkt. #20 at 16. Defendant also asserts that the FCE fails to establish any limitations beyond those assessed by the ALJ in her RFC. *Id.*

This Court cannot reverse an ALJ's decision on the basis of evidence first submitted to the Appeals Council before or after the Appeals Council denies review. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir.1993). The Court can only consider the evidence for the purposes of a Sentence Six remand under 42 U.S.C. § 405(g), which provides in relevant part that: "[t]he court may ... at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Thus, in order to warrant a Sentence Six remand, the party seeking remand must show: (1) "that the evidence at issue is both 'new' and 'material,' " and (2) "that there is 'good cause for the failure to incorporate such evidence into the record in a prior proceeding.' " 42 U.S.C. § 405(g); *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir.2006) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir.1994)).

A claimant meets her burden of showing that such evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.2001) (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S.Ct. 2658,

-12-

110 L.Ed.2d 563 (1990)). A claimant must also show that such evidence is "material" by demonstrating "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357 (citing *Sizemore v. Sec'y of Health & Human Servs.*., 865 F.2d 709, 711 (6th Cir.1988)). A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Foster,* 279 F.3d at 357 (citing *Willis v. Sec 'y of Health & Human Servs*., 727 F.2d 551, 554 (1984)).

Here, Plaintiff fails to show how the new evidence is material to her alleged disability at the time the ALJ issued the decision. As pointed out by Defendant, the FCE is dated June 28, 2016 and the relevant time period for the ALJ's decision began on Plaintiff's alleged onset date of disability of December 15, 2007, through Plaintiff's date last insured of March 31, 2015, nearly one year after the FCE was assessed. Tr. at 18, 53. Moreover, the therapist who performed the FCE specifically indicated that her evaluation was "[b]ased upon patient's performance on this date," which again was June 28, 2016, well after the relevant time period for this case. *Id*. at 19. Accordingly, the FCE does not reveal further information about Plaintiff's ability to work at the time the ALJ's decision was issued and is therefore not material in order to warrant a Sentence Six remand. *See Oliver v. Sec. of Health and Human Servs.*, 804 F.2d 964 (6th Cir. 1986).

In addition, Plaintiff fails to show how the FCE would cause a change in the ALJ's decision, even if it applied to the relevant time period, because the FCE is similar to the ALJ's RFC for Plaintiff as both find that Plaintiff can perform a reduced range of sedentary work. Tr. at 18-19, 36. The therapist who assessed Plaintiff's FCE found that "[b]ased upon patient's performance on this date," Plaintiff could lift up to 10 pounds to the waist, and up to 5 pounds to the shoulders. Tr. at 19. Similarly, the ALJ found that Plaintiff could perform a reduced range of sedentary work, which requires "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledges, and small tools." Tr. at 36, citing 20 C.F.R. § 404.1567(a). The therapist further found that Plaintiff could occasionally bend, climb stairs, squat, kneel, crawl, and walk up to 20 minutes at a time, as well as overhead reach frequently and frequently perform fine motor manipulation with the right hand and operate foot controls with the right foot. Tr. at 18. The ALJ

-13-

found that Plaintiff could occasionally use ramps and stairs, occasionally balance, kneel, stoop, crouch and crawl, and she could frequently handle and finger with the left hand. *Id.* at 36. The therapist found that Plaintiff could walk up to 20 minutes, stand for up to 30 minutes at a time, and sit for up to 30 minutes at a time as well before having to change positions. *Id*. at 19. She indicated that Plaintiff could walk and stand "on occasion." *Id.* Sedentary work as found by the ALJ requires walking and standing "occasionally." *Id*. at 36; 20 C.F.R. § 404.1657(a). The ALJ further found that Plaintiff could have a sit/stand option at will provided that she was not off-task more than 10% of the workday. Tr. at 36.

The Court finds that Plaintiff has failed to establish that the new evidence in the form of the June 28, 2016 FCE is material such that a Sentence Six remand is warranted. The FCE was issued after her date last insured in this case and indicated that it was based upon her performance on that date. Tr. at 18. Moreover, Plaintiff fails to show how the FCE, even if it applied during the relevant time period, would likely change the ALJ's decision since it is very similar to the ALJ's RFC for Plaintiff.

## **VI.** **CONCLUSION**

For the following reasons, the Court AFFIRMS the decision of the ALJ and DISMISSES Plaintiff's complaint in its entirety WITH PREJUDICE. The Court also finds that a sentence six remand is not warranted in this case.

Date: September 12, 2018         */s/George J. Limbert*
                                  GEORGE J. LIMBERT
                                  UNITED STATES MAGISTRATE JUDGE